# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM L. SHOULDERS, )<br>      Petitioner, )<br>)<br>vs. )<br>)<br>J.A. ECKARD; and THE ATTORNEY )<br>GENERAL OF THE STATE OF, )<br>PENNSYLVANIA, )<br>      Respondents. ) | Civil Action No. 14-1753<br>Judge David Stewart Cercone/<br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 14 |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss, ECF No. 14, filed by the Respondents be granted and that the Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition") be dismissed as time-barred and that a certificate of appealability be denied.

### II. REPORT

William L. Shoulders ("Petitioner") is a state prisoner, challenging his first degree murder conviction. Petitioner concedes that he shot at the victim who was sitting in a car. The evidence establishes that all three bullets that were found to have been shot into the car where the victim was sitting were shot from the gun that belonged to Petitioner. Respondents filed a Motion to Dismiss, pointing out that the Petition was untimely filed. ECF No. 14. Petitioner filed a Response to the Motion to Dismiss, arguing that he was actually innocent of the crime of first degree murder because he fired in self-defense and because he did not fire the fatal bullet. ECF No. 17. Because Petitioner offers no new evidence of his actual innocence, the Motion to Dismiss should be granted and the Petition dismissed as untimely filed.

## A. THE PETITION IS TIME-BARRED.

### 1. The AEDPA Statute of Limitations

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because the Petition in this case was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Respondents pointed out in their Motion to Dismiss that this Petition is untimely under the AEDPA. They are correct. The AEDPA requires that state prisoners file their federal habeas petition within one year after their conviction became final.[1] Specifically, the AEDPA provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . . .
>
>   (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

---

[1] Although the AEDPA provides three other potential starting points for the running of its one year limitations period, Petitioner has not argued for the application of any of those three other starting points and, indeed, from the record, none appear to be applicable.

Petitioner's conviction became final 90 days after May 25, 2006, the date on which the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal, i.e., August 23, 2006, after Petitioner's direct appeal rights had been reinstated. See Stokes v. District Attorney of Philadelphia, 247 F.3d 539, 542 (3d Cir. 2001)(explaining that AEDPA's phrase "became final by ... expiration of time for seeking [direct] ... review" includes the 90 day time limit in which to seek certiorari); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999).

As provided by the AEDPA, Petitioner would have had one year after August 23, 2006, i.e., the date his conviction became final, in which to file his Petition attacking deficiencies in his conviction/sentence. However, pursuant to 28 U.S.C. § 2244(d)(2), the filing of a timely PCRA Petition and its pendency tolls the running of the AEDPA statute of limitations. Petitioner did not file his "first" PCRA Petition until November 3, 2006.[2] Hence, between August 23, 2006 and November 3, 2006, a total of 72 days out of the 365 day AEDPA statute of limitations were utilized, leaving Petitioner with only 293 days remaining.

The first PCRA Petition was pending only until January 31, 2011, the date on which the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal. Stokes v. District Attorney, 247 F.3d 539, 543 (3d Cir. 2001) (time during which a prisoner may file a certiorari petition from the denial of his state post-conviction petition does not toll the limitations period). Hence, the AEDPA statute of limitations began to run again as of February 1, 2011 and ran out 293 days later on November 21, 2011.

While it is true that Petitioner filed two other PCRA Petitions, because the state courts found them to have been untimely filed, those two other PCRA Petitions cannot statutorily toll

---

[2] We refer to the PCRA Petition filed on November 3, 2006 as the "First PCRA Petition" even though he had filed a previous PCRA Petition which resulted in the reinstatement of his direct appeal rights. We refer to the "First PCRA Petition" as first because it is the first after Petitioner's conviction became final for purposes of AEDPA's statute of limitations.

3

the AEDPA statute of limitations. Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005) ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings' including 'time limits upon its delivery'")(*quoting* Artuz v. Bennett, 531 U.S. 4, 8 (2000));  Merritt v. Blaine, 326 F.3d 157, 165-66 & n. 6 (3d Cir. 2003) (holding that because petitioner's second PCRA petition was untimely under state law, it was not "properly filed" for purposes of AEDPA).

Pursuant to the Prisoner Mail Box rule, Petitioner is not deemed to have filed the present Petition in this Court, until, at the earliest, December 29, 2014, or more than three years after the AEDPA statute of limitations had already run out.  Accordingly, the Petition is clearly time barred.

### 2. Petitioner has not Shown a "Miscarriage of Justice."

In both the Petition and his Response to the Motion to Dismiss, Petitioner does not argue for equitable tolling but only invokes the miscarriage of justice exception to the AEDPA statute of limitations.

There is a miscarriage of justice exception to the AEDPA statute of limitations. McQuiggen v. Perkins, __ U.S. __, 133 S.Ct. 1924 (2013).  In Werts v. Vaughn, 228 F.3d at 202, the United States Court of Appeals for the Third Circuit explained, in the context of procedural default, that the miscarriage of justice exception means:

> the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice."  Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)].  Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

Because the miscarriage of justice standard exception requires the showing of "actual innocence," the miscarriage of justice standard has also been referred to as the "actual innocence" exception. Young v. Clearfield County Commonwealth of Pleas, Civ.A. No. 08-5J, 2008 WL 1711098, at *1 (W.D. Pa. April 11, 2008) ("He appears to be invoking the actual innocence exception (also known as the miscarriage of justice exception) to the procedural default. . . ."). The phrase "miscarriage of justice" has been explained by the United States Supreme Court to require a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995); United States v. Sorrells, 145 F.3d 744, 749 n. 3 (5th Cir. 1998) ("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'"). This actual innocence claim or miscarriage of justice claim is a gateway claim,[3] meaning that Petitioner's claim is because I am actually innocent, the Court should overlook his violation of the AEDPA statute of limitations and address his habeas claims on the merits.

In McQuiggen, the United States Supreme Court stressed how narrow the miscarriage of justice exception is to the AEDPA's statute of limitations, and consequently, how rare a successful miscarriage of justice exception would occur:

---

[3] The Supreme Court in Schlup explained that an actual innocence claim in the context of seeking to have a procedural default "forgiven" so as to have the procedurally defaulted claims reviewed on the merits is a "gateway" claim. In other words, the claim of actual innocence in the Schlup context is not a claim that because I am actually innocent by virtue of that fact alone I am entitled to federal habeas relief but rather is a claim that contends because I am actually innocent, the court should forgive my procedural default of the claim in the state courts, or, in Petitioner's case, my violation of the AEDPA statute of limitations, and consider my procedurally defaulted claims on their merits. Schlup, 513 U.S. at 315. The Court in Schlup contrasted such a "gateway" claim to a "freestanding" claim of actual innocence such as raised in Herrera v. Collins, 506 U.S. 390 (1993), wherein the claim was precisely, because I am actually innocent, by virtue of that fact alone, I am entitled to federal habeas relief.

> We hold that actual innocence, if proved, serves as a gateway through which a
> petitioner may pass whether the impediment is a procedural bar, as it was in
> Schlup and House, or, as in this case, expiration of the statute of limitations. We
> caution, however, that tenable actual-innocence gateway pleas are rare: "[A]
> petitioner does not meet the threshold requirement unless he persuades the district
> court that, in light of the new evidence, no juror, acting reasonably, would have
> voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329,
> 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the
> Schlup standard is "demanding" and seldom met). And in making an assessment
> of the kind Schlup envisioned, "the timing of the [petition]" is a factor bearing on
> the "reliability of th[e] evidence" purporting to show actual innocence. Schlup,
> 513 U.S., at 332, 115 S.Ct. 851.

McQuiggen, 133 S.Ct. at 1928. See also id., at 1936 ("[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" (quoting Schlup, 513 U.S. at 327).

In order to successfully invoke the "miscarriage of justice" exception, a petitioner must:

> satisfy a two-part test in order to obtain review of otherwise procedurally barred
> claims. First, the petitioner's allegations of constitutional error must be supported
> with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28.
> Second, the petitioner must establish "that it is more likely than not that no
> reasonable juror would have convicted him in light of the new evidence." *Id*. at
> 327.

Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001), cert. denied, 498 U.S. 881 (2001). It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.

The first prong of the two part test, i.e., whether the proffered evidence is new, provides that "evidence is new only if it was not available at trial[.]" Amrine, 238 F.3d at 1028.[2] Petitioner's claim of actual innocence fails on this ground.

### a. Petitioner's evidence is not "new."

Petitioner fails to carry his burden of proving new evidence of actual innocence because Petitioner fails to point to any new evidence, i.e., evidence that was not known of or available at trial. Petitioner does point to a failure to test the victim's clothes for gun powder residue, which Petitioner should have known about at trial but certainly knew about no later than 2008. See ECF No. 14-13 at 16 ("The record establishes, however, that Petitioner knew prior to and at the time of trial that the victim's clothing was not analyzed for gun powder produced for analysis by experts retained by the defense…..Petitioner alleges that he only learned in October 2008 that the Motion for Discovery . . . specifically requested the clothing.").

Accordingly, the lack of testing does not constitute "new evidence."

Petitioner also points to the trajectory of one of the bullets as being evidence of the fact that the fatal shot was not fired by Petitioner. ECF No. 17 at 17 ("it is impossible for one person to stand in one position firing in one direction to have fired bullets with opposite trajectories."). This argument is not new evidence as the difference in the trajectories of the bullets was known at the time of trial and was the subject of much testimony and cross-examination. Hence, this opposite trajectory evidence does not constitute "new evidence."

---

[2] There does appear to be one narrow exception to the requirement of producing new evidence in order to successfully demonstrate a "miscarriage of justice." See, e.g., United States v. Garth, 188 F.3d 99 (3d Cir. 1999). However, for reasons explained in Sweger v. Chesney, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and Gale v. Rozum, No. 06-CV-1266, 2006 WL 2092572 (M.D.Pa. July 25, 2006), the narrow Garth exception does not apply here. Whereas in Garth a subsequent interpretation of a criminal statute by the United States Supreme Court may have rendered the petitioner therein not guilty of the crime, no such factual scenario is present here.

7

Because the evidence was concededly available at the time of the trial, it cannot constitute "new" evidence of actual innocence. McQuiggen, 133 S.Ct. at 1935 ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the **new** evidence.'" McQuiggen, 133 S.Ct. at 1935 (quoting Schlup, 513 U.S. at 327) (emphasis added); Ross v. King, No. 1:13cv70–HSO–RHW, 2013 WL 6048156, at *3 (S.D. Miss. Nov. 15, 2013) ("[petitioner] has presented no new evidence, he simply argues the DNA evidence which existed at the time he pled guilty is evidence of his innocence."); James v. Ratman, No. CV 11–8693–ABC(MAN), 2013 WL 5840278, at *8 (C.D. Cal. Oct. 28, 2013) (noting that statement of which petitioner "was fully aware ... before and during his trial ... cannot be said to constitute the requisite 'evidence claimed to have been wrongly excluded or to have become available only after the trial' ") (quoting Schlup, 513 U.S. at 328).[3] Accordingly,

---

[3] For present purposes of deciding whether the evidence is "new," we utilize the so-called "modified Amrine definition" of "new evidence" as set forth in Houck v. Stickman, 625 F.3d 88 (3d Cir. 2010). However, because the allegedly new evidence presented here was known to Petitioner's trial counsel at the time of the trial, we do not find the evidence to constitute "new evidence" within the contemplation of Houck. See id. at 94 ("we are inclined to accept the *Amrine* definition of new evidence with the narrow limitation that if the evidence was **not discovered** for use at trial because trial counsel was ineffective, the evidence may be regarded as new provided that it is the very evidence that the petitioner claims demonstrates his innocence.") (emphasis added). Here, we note that Petitioner's trial counsel was not ineffective for failing to have the clothing of the victim tested for gun powder residue as fully explained by the Court of Common Pleas in its November 12, 2009 Opinion denying PCRA relief. ECF No. 14-7 at 21 – 28. Specifically, "[i]f trial counsel conducted the test [for gunpowder on the victim's clothes] and it was negative or inconclusive and the Commonwealth obtained the results, this would effectively remove or undermine any argument regarding Defendant having a gun [sic, there was no dispute about Defendant having a gun] or a fourth shot being responsible for the victim's death." Id. at 28. Essentially, the fact that defense counsel did not know whether there was gunshot residue on the victim's clothing allowed defense counsel to argue that it is possible that Petitioner did not shoot the fatal bullet because evidence could show that the fatal bullet was shot from a gun in the car and not from Petitioner's gun. Hence, Petitioner's trial counsel possessed a strategic reason to not test the clothing of the victim, and therefore, counsel was not ineffective.

Petitioner fails to carry his burden to show that he has "new" evidence so as to satisfy the first prong of the actual innocence test.

Given that there is no "new evidence" we do not address the second prong of the two part test recognized in Amrine. As such, we do not need to weigh any such non-existent "new evidence" against the evidence of trial to make a probabilistic determination of what a reasonable juror would have found in the light of the "new evidence."

### B. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). There is a difficulty with this provision when the District Court does not decide the case on the merits but decides the case on a procedural ground without determining whether there has been a denial of a constitutional right. See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000). In Slack, the Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484. Hence, the analysis as to whether a certificate of appealability should issue to review a procedural question, has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." Walker, 230 F.3d at 90. The test is conjunctive and both prongs must be met. See id. Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the

Petition based upon it being time barred was correct. Accordingly, a certificate of appealability should be denied

**III. CONCLUSION**

For the reasons set forth herein, the Motion to Dismiss should be granted and a certificate of appealability should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                                              Respectfully submitted,

Date: February 29, 2016                s/Maureen P. Kelly
                                              MAUREEN P. KELLY
                                              CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable David Steward Cercone
       United States District Judge

       WILLIAM L. SHOULDERS
       ET-2078
       1100 Piker Street
       Huntingdon, PA 16654-1112

       All counsel of record via ECF